## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re ) | |
| ) | |
| LOVELAND ESSENTIAL GROUP, LLC, ) | Case No. 11-38054 EEB |
| ) | Chapter 11 |
| EIN: 20-4451461 ) | |
| ) | |
| Debtor. ) | |

### DEBTOR'S AMENDED PLAN OF LIQUIDATION,
### DATED NOVEMBER 30, 2012

### ARTICLE 1
### SUMMARY

This Plan of Liquidation (the "**Plan**") under chapter 11 of the Bankruptcy Code (the "**Code**") proposes to sell all assets of Loveland Essential Group, LLC (the "**Debtor**") and pay from the net proceeds plus accumulated cash ("Sale Proceeds") to holders of allowed claims against the Debtor according to the priority established under the Code on the **Distribution Date** (as defined in Section 8.1 below) of the Plan.

This Plan provides for four (4) classes of claims and interests.  This Plan also provides for the payment of administrative and priority claims.

On the Distribution Date, the Debtor will administer distributions to the holders of allowed claims against the Debtor as provided in, and pursuant to the priorities established by, this Plan.

All creditors and equity security holders should refer to Articles 2 through 8 of this Plan for information regarding the precise treatment of their claims and interests.  A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan.  **Your rights may be affected.  You should**

**read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

# ARTICLE 2
# CLASSIFICATION OF CLAIMS AND INTERESTS

2.1     Class 1.         The Home State Bank Claim.

2.2     Class 2.         The Allowed Unsecured Claims not entitled to priority under Section 507 of the Code, excluding Class 3 Claims.

2.3     Class 3.         The lease agreement for occupancy of a portion of the Property with the Debtor, as lessor, and Pool Tyme, LLC and Martin Jara, as lessee.

2.4     Class 4.         The Interests held by The Randy Jackson Revocable Trust Amended 6/18/98, Essential Group, LLC, and Grommon Farms, Inc. (the "**Debtor's Members**").

# ARTICLE 3
# TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEE FEES, AND PRIORITY TAX CLAIMS

3.1     Unclassified Claims.  Pursuant to §1123(a)(1) of the Code, administrative expense claims and priority tax claims are not in classes.

3.2     Administrative Expense Claims.

(a)     Except for professional fees requiring Bankruptcy Court approval, each holder of an administrative expense claim that has been allowed pursuant to § 503 of the Code will be paid in full starting on the Distribution Date of this Plan, in cash.

(b)     Any entity seeking allowance of an administrative expense claim shall prepare a final application for all fees and expenses incurred through the Effective Date, and shall

2

file and serve such application no later than the date that is thirty (30) days after the Effective Date. Failure to timely file such application shall result in the administrative expense claim being forever barred and discharged. As soon as practicable after the Bankruptcy Court enters an order allowing an administrative expense claim pursuant to application made under this subsection, the Debtor shall pay the holder thereof the unpaid allowed amount of such claim.

(c) Professionals employed by the Debtor after the Effective Date shall not file fee applications for services rendered. Such fees shall be paid from Sale Proceeds at or prior to the Distribution Date.

3.3 <u>Priority Tax Claims</u>. Each holder of a priority tax claim allowed pursuant to §§ 507(a)(8) and 502 of the Code, if any, will be paid in full from Sale Proceeds on the Distribution Date. Debtor does not believe there are any priority tax claims.

3.4 <u>United States Trustee Fees</u>. All fees required to be paid by 28 U.S.C. §1930(a)(6) ("**U.S. Trustee Fees**") will accrue and be timely paid from Sale Proceeds until the Debtor's bankruptcy case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of this Plan will be paid on the Effective Date.

## ARTICLE 4
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.1 Claims and interests shall be treated as follows under this Plan:

| **Class** | **Impairment** | **Treatment** |
|---|---|---|
| Class 1: Home State Bank Claim | Unimpaired | Class 1 consists of the Home State Bank Claim. Home State Bank's allowed claim shall be paid in full at closing on the sale of the Property. Class 1 is Unimpaired under the Plan. |
|  |  |  |

| Class | Impairment | Treatment |
|---|---|---|
| Class 2: Allowed Unsecured Claims | Impaired | Class 2 consists of the Allowed Unsecured Claims, excluding 2Class 3, and not entitled to priority under Section 507(a)(8) of the Bankruptcy Code.  Class 2 shall be paid a Pro Rate share of the Unsecured Distribution on the Distribution Date.  Class 2 is Impaired under the Plan. |
| Class 3: Lease Agreement with Pool Tyme, LLC and Martin Jara | Impaired | Class 3 consists of Pool Tyme, LLC and Martin Jara's unexpired lease agreement entered into on August 2, 2010. The lease provides the Lessee with possession of a portion of the Property.  The lease agreement terminates on March 31, 2015.  On the Effective Date, the lease agreement is terminated by the rejection pursuant to 11 U.S.C. § 365(h)(1)(A).  If termination occurs on the Effective Date, the Debtor estimates the Lessee's claim as approximately $50,000.00.  Class 3 shall be satisfied in full by a Pro Rata share of the Unsecured Distribution on the Distribution Date.  Class 3 is Impaired. |
| Class 4: Interests in the Debtor | Impaired | Class 4 consists of the existing equity held by members of the Debtor.  The equity interest in the Debtor shall be cancelled and receive no distribution under the Plan.  Class 4 is Impaired under the Plan. |

## ARTICLE 5
## ALLOWANCE AND DISALLOWANCE OF CLAIMS; DISTRIBUTIONS

5.1     <u>Disputed Claim</u>.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor, or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.2     <u>Objections and Bar Date for Filing Objections to Claims</u>.  As soon as practicable, but in no event later than 30 days after the Effective Date (unless such deadline is extended by the Court for good cause), objections to claims shall be filed with the Bankruptcy Court and served

4

upon the holders of each of the claims to which objections are made pursuant to the Code, Bankruptcy Rules, or any applicable non-bankruptcy law. Objections filed after such date will be barred. The Plan Agent shall have full right, power and authority to investigate and, if necessary, object to claims within the time deadline.

       5.3      <u>Settlement of Claims</u>. Only the Plan Agent shall have the authority to settle claims. With respect to any settlement of a claim involving an amount of $50,000 or less, no notice to creditors, or approval by the Bankruptcy Court, of the settlement will be required. With respect to any claim involving an amount greater than $50,000, settlement by the Plan Agent of any objection to any claim shall be permitted on the fifteenth (15th) day after notice of the settlement has been provided by the Plan Agent to the objector, the claimant, and all persons specifically requesting such notice following confirmation of this Plan. If on or before the objection deadline no written objection to the proposed settlement is submitted to the Plan Agent, such settlement shall be conclusively approved. If a written objection to the proposed settlement is submitted before the objection deadline, the Plan Agent and the objector shall confer to reach a consensual resolution of the dispute. If no resolution is reached within thirty (30) days after the Plan Agent's receipt of the objection, the Plan Agent shall file an application with the Bankruptcy Court to approve the settlement and the settlement shall be subject to approval by the Bankruptcy Court (in accordance with the standards developed under Bankruptcy Rule 9019) and upon notice to the objecting party.

       5.4      <u>Delivery of Distributions</u>. Distributions shall be made by the Plan Agent as provided in the Plan:

       (a)      At the addresses set forth in the proofs of claims or equity interests filed by holders of claims or equity interests (or the last known addresses of such holders if no proof of claim or equity interest is filed or if the Debtor has been notified of a change of address);

  (b) At the addresses set forth in written notices of address change delivered to the Debtor after the date of any related proof of claim or equity interest; or

  (c) At the addresses reflected in the Debtor's Statements and Schedules if no proof of claim or equity interest has been filed and the Debtor has not received a written notice of change of address.

 5.5 <u>Unclaimed Distributions</u>.  If any distribution to a holder of an allowed claim is returned as undeliverable, no further distributions to such holder will be made unless and until the Debtor is notified of such holder's then current address, at which time all missed distributions shall be made to the holder without interest.  All claims for undeliverable or uncashed distributions must be made on or before the first (1st) anniversary of the date applicable to such distribution, or with respect to the final distribution, within ninety (90) days thereof.  After such date, all such unclaimed property will revert to Debtor for the benefit of remaining creditors, and the claim of any holder or successor to such holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat law to the contrary.

 5.6 <u>Estimation of Claims</u>.  For purposes of making distributions provided for under the Plan, all claims objected to may be estimated by the Debtor at an amount equal to (a) such lesser amount that is agreed to by the holder of such claim, (b) the amount claimed if the Court has not made an estimation of such claim or the holder of such claim has not agreed to a lesser amount, or (c) the amount, if any, determined by the Court pursuant to § 502(c) of the Bankruptcy Code as an estimate for distribution purposes.  In any event, the estimated amount shall be the maximum amount of the claim for distribution purposes under this Plan and any Order of the Court estimating the claim shall also set the maximum amount of the claim if it becomes an allowed claim.  The Debtor shall create a reserve from the Operations Income sufficient to pay the

estimated claims, when and if they become allowed claims. Notwithstanding anything herein to the contrary, no distributions shall be made on account of any claim so estimated until such claim is an allowed claim.

    5.7    <u>Delay of Distribution on a Disputed Claim</u>. No distribution will be made on account of a disputed claim until and unless such claim is allowed by a final non-appealable order.

## ARTICLE 6
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases. Class 3 specifically addresses a rejection of an executory lease. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than twenty-eight (28) days after the date of the order confirming this Plan.

## ARTICLE 7
## MEANS FOR IMPLEMENTATION OF THE PLAN

    7.1    <u>Implementing Actions</u>. Upon Court approval and confirmation of this Plan, this Plan shall be implemented and the following actions shall occur:

    (a)    On the Effective Date (unless accomplished sooner), the Debtor shall, pursuant to the provisions of the Bankruptcy Code, sell its Property and may sell the RMRV Units to the highest and best bidder ("Purchaser(s)");

    (b)    Between the Confirmation Date and the Effective Date, existing management will continue to manage the affairs of and operate the Debtor. During this period, the Debtor may pay all expenses incurred in the ordinary course of business and any Administrative Claims approved by the Court;

    (c)    On the Effective Date, the Plan Agent will begin serving pursuant to this Plan;

    (d)    On the Effective Date (unless accomplished sooner), the Purchaser(s) shall pay the purchase price and the Debtor shall transfer the Property and if they sold the RMRV Units to the Purchaser(s) free and clear of all Liens, Liabilities, Claims and Interests. The Plan Agent will act on behalf of the Debtor if the Debtor no longer manages its affairs at the time of transfer;

(e) On the Effective Date, the Debtor shall transfer the Sale Proceeds and, if not sold, the RMRV stock to the Plan Agent free and clear of all Liens, Liabilities, Claims and Interests;

(f) The Plan Agent shall administer the Sale Proceeds and, if not sold, the RMRV stock, and shall hold and dispose of its assets in accordance with the provisions of this Plan; and

(g) The Plan Agent shall carry out its responsibilities under this Plan.

7.2 Distribution of Sale Proceeds. On the Distribution Date, and with respect to the RMRV Units, if not sold by the Distribution Date, when sold, the Sale Proceeds shall be distributed in the following order until exhausted:

(a) The Plan Agent shall use the funds in the Administrative Claims Reserve to pay the Allowed Administrative Claims, with any excess paid as Unsecured Distributions.

(b) The Plan Agent shall use the funds in the Priority Tax/UST Reserve to pay the Priority Tax Claims and United States Trustee Fees, with any excess paid as an Unsecured Distribution.

(c) (1) first, to Home State Bank's secured claim, until paid in full;

(2) second, to the Plan Agent an amount sufficient, in the Debtor's reasonable determination, to establish a reserve to be used for payment of Administrative Claims (the "Administrative Claims Reserve")

(3) third, to the Plan Agent an amount sufficient, in the Debtor's reasonable determination, to establish a distribution reserve to be used for payment of the aggregate amount of the Priority Tax Claims Reserve and United States Trustee's fees ("Priority Tax/UST Reserve"); and

(4) finally, in Pro Rata shares to the holders of allowed unsecured claims in Classes 2and 3 (collectively, the "Unsecured Distribution");

7.3 Officers and Directors. From and after the Confirmation Date and until the Effective Date, the members and managers of the Debtor that serve prior to the Confirmation Date shall continue to serve as such.

8

7.4     Identity and Affiliations with Debtor.  The Debtor identifies that insiders of the Debtor may bid on and purchase the Property or the RMRV Units from the Debtor.  The insiders include: (a) Randy Jackson is the controlling individual of The Randy Jackson Revocable Trust Amended 6/18/98, a managing member of the Debtor, (b) Michael Andrzejek is the controlling individual of the Essential Group, LLC, a managing member of the Debtor, (c) Brian Hedberg is the third principal of the Debtor, and is a member of Essential Group, LLC, and (d) Grommon Farms, Inc. and Gary Grommon who is the owner of Grommon Farms, Inc.

7.5     Plan Agent.  David Dennis will be the Plan Agent, and will perform his duties in compliance with the provisions of this Plan.  The Debtor will transfer all Sale Proceeds, if not sold, the RMRV Units, and any and all remaining interest in the Debtor, including right to pursue all avoidance actions or claim objections, as discussed in the Plan and disclosure statement.  Mr. Dennis will be paid $150.00 per hour.  The Plan Agent will act on behalf of the Debtor after the Effective Date, and his duties include executing requisite documents, receiving purchase money for any completed sale, and transferring any remaining property and money on behalf of the Debtor in compliance with this Plan.

7.6     Plan Funding.

(a)     As of October 31, 2012, Debtor has cash on hand of approximately $108,338.81.  Although this is the Debtor's slow season, the Debtor received in excess of $70,000.00 in income last month.

### ARTICLE 8
### GENERAL PROVISIONS

8.1     Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

Code is defined in Article 1.

Confirmation Order is the order entered by the Court confirming this Plan.

Debtor is defined in Article 1.

Debtor's Members or Members are The Randy Jackson Revocable Trust Amended 6/18/98, Essential Group, LLC, and Grommon Farms.

Distribution Date means thirty (30) days after the Effective Date.

Effective Date is defined in Section 8.2.

Final Order means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction which has not been reversed, stayed, modified, or amended and as to which (i) the time to appeal or seek review, rehearing, or certiorari has expired (without regard to whether the time to seek relief of a judgment under Rule 60(b) of the Federal Rules of Civil Procedure has expired); and (ii) no appeal or petition for review, rehearing, or certiorari is pending, or if pending as to which no bond or other stay has been issued, or as to which any right to appeal or seek review, rehearing, or certiorari has been waived.

Grommon Farms is Grommon Farms, Inc., a creditor of the Debtor.

Grommon Farms Claim is the claim of Grommon Farms, Inc. and Gary and Connie Grommon, which arises from a judgment entered against the Debtor and an amount still owed under a purchase sale-agreement. Grommon Farms has filed a claim in the amount of $2,349,000.00.

Home State Bank Claim is the Secured Claim of Home State Bank, arising from the outstanding balance on a loan and line of credit in the amount of $3,045,681.51.

Interests are the ownership interests of the Debtor in the Estate which are Essential Group, LLC (holding 40% or 2,000 voting units), Randy Jackson Revocable Trust (holding 20% or 1,000

voting units), and Grommon Farms, Inc. (holding 40% or 1,000 Class A and 1000 Class B non-voting shares).

Lease Agreement is the lease agreement entered into on August 2, 2010 by the Debtor, as lessor, and Pool Tyme, LLC and Martin Jara, as lessee.

Petition Date is December 1, 2011.

Plan is defined in Article 1.

Plan Agent is David Dennis.

Pro-Rata Share means a claimant's proportionate share of any distribution as determined by dividing the amount of its allowed claim by the total of all allowed and disputed and estimated claims in such class.

Property means the RV Park operated by the Debtor and located at 4421 E. US Hwy. 34, Loveland, Colorado.

Released Parties means, collectively, (a) the Debtor; (b) Michael Andrzejek; (c) Brian Hedberg; (d) Randy Jackson; (e) Gary Grommon; (f) Connie Grommon; (g) Grommon Farms, Inc.; (h) Essential Group, LLC; (i) The Randy Jackson Revocable Trust Amended 6/18/98; and (j) with respect to each of the entities in clauses (g) through (i), such entities' heirs, successors, assigns, advisors, employees, officers, directors, representatives, members, financial advisors, attorneys, accountants, consultants and other professionals, in each case solely in their capacity as such.

RMRV Units means the 450 units in Rocky Mountain RV Essential Group, LLC owned by the Debtor.

Sale Proceeds means the proceeds of the sale of RMRV Units and the Property, less any fees or costs associated with the sale.

Unsecured Claims are the claims of unsecured creditors.

Unsecured Distribution is defined in Section 7.2(4).

U.S. Trustee Fees is defined in Section 3.4.

8.2  Effective Date of Plan.  The effective date of this Plan is the fifteenth (15th) business day following the date of the entry of the order confirming this Plan.  But if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.3  Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.4  Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## ARTICLE 9
## NO DISCHARGE OF DEBTOR

In accordance with § 1141(d)(3) of the Code, the Debtor will not receive any discharge of debt in this bankruptcy case.

## ARTICLE 10
## OTHER PROVISIONS

10.1  Preservation of Debtor's Claims, Demands and Causes of Action.  All claims, demands and causes of action held by, through or on behalf of the Debtor against any other person are hereby preserved in full; and no provision of this Plan shall impair the rights of the Debtor with respect to such claims, demands and causes of action, to prosecute or defend against any such preserved claims, demands and causes of action.  The Debtor has settled an avoidance action against Grommon Farms, Inc. to avoid its judgment lien on the Property.  The lien has been

released.Grommon Farms, Inc. filed an action against Debtor's principals on October 24, 2012, which is disputed by defendants and the Debtor.

    10.2    <u>Release and Exculpation</u>.

    (a)    PURSUANT TO SECTION 1123(b)(3) OF THE BANKRUPTCY CODE, EFFECTIVE AS OF THE EFFECTIVE DATE, THE DEBTOR, IN ITS INDIVIDUAL CAPACITY AND AS DEBTOR IN POSSESSION FOR AND ON BEHALF OF ITS ESTATE, SHALL RELEASE AND DISCHARGE, AND BE DEEMED TO HAVE ABSOLUTELY, UNCONDITIONALLY, AND IRREVOCABLY RELEASED AND DISCHARGED ALL RELEASED PARTIES FOR AND FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION EXISTING AS OF THE EFFECTIVE DATE IN ANY MANNER ARISING FROM, BASED UPON, OR RELATED TO, IN WHOLE OR IN PART, THE DEBTOR, ANY PREPETITION OR POSTPETITION ACT TAKEN OR OMITTED TO BE TAKEN IN CONNECTION WITH OR RELATED TO OR ARISING OUT OF DEBTOR'S CHAPTER 11 CASE, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR AND ANY RELEASED PARTY, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASE, OR ANY ACT, OMISSION, OCCURRENCE OR EVENT IN ANY MANNER RELATED TO ANY SUCH CLAIMS, INTERESTS, RESTRUCTURING OR THE CHAPTER 11 CASE, INCLUDING BUT NOT LIMITED TO ANY CLAIM RELATING TO, OR ARISING OUT OF, THE FILING OR ADMINISTRATION OF THE CHAPTER 11 CASE AND ALL DOCUMENTS AND PLEADINGS FILED THEREIN, EXCEPT AS SPECIFICALLY PROVIDED IN THE PLAN.

10.3 <u>Bankruptcy Court Jurisdiction</u>. The Debtor reserves the right to reopen the Chapter 11 Case after Confirmation and dismissal for the purposes set forth in this paragraph. The Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case for the following purposes:

(a) To hear and determine any and all objections to the allowance of Claims or Interests.

(b) To determine any and all applications for allowances of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan, to the extent such claim was incurred prior to the Effective Date.

(c) To hear and determine any and all pending applications for the rejection or assumption, or for the assumption and assignment, as the case may be, of executor contracts or unexpired leases to which the Debtor is a party, and to hear and determine any and all Claims arising therefrom.

(d) To hear and determine any and all applications, adversary proceedings, and contested matters in the Bankruptcy Court that may be pending on the Effective Date or instituted by the Debtor thereafter.

(e) To consider any modifications of the Plan, to remedy any defect or omission, or reconcile any inconsistency in the Plan or in any order of the Bankruptcy Court, including the Confirmation Order.

(f) To hear and determine any application to sell the Debtor's property free and clear of liens.

(g) To hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan.

(h) To consider and act on the compromise and settlement of any claim or cause of action by or against the Debtor where the original claim or cause of action is in excess of $50,000.00.

(i) To issue orders in aid of execution of the Plan as contemplated by Section 1142 of the Bankruptcy Code.

(j) To determine such other matters as may be set forth in the Confirmation Order or which may arise in connection with the Plan or the Confirmation Order.

14

10.4 <u>Confirmation By Non-Acceptance Method</u>. The Debtor hereby requests, if necessary, confirmation of the Plan pursuant to Bankruptcy Code §1129(b), with respect to any impaired class of claims that does not vote to accept the Plan.

Dated: November 30, 2012.

                                                LOVELAND ESSENTIAL GROUP, LLC

                                                By: /s/ Michael Andrzejek
                                                     Michael Andrzejek, Manager

John C. Smiley, Esq.
Ethan J. Birnberg, Esq.
Lindquist & Vennum P.L.L.P.
600 17th Street, Suite 1800 South
Denver, CO 80202
Telephone: (303) 573-5900
Facsimile: (303) 573-1956
E-Mail: jsmiley@lindquist.com
E-Mail: ebirnberg@lindquist.com
ATTORNEYS FOR LOVELAND ESSENTIAL GROUP, LLC