IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) |
| | ) |
| LOVELAND ESSENTIAL GROUP, LLC, | ) Case No. 11-38054 EEB |
| | ) |
| EIN: 20-4451461 | ) Chapter 11 |
| | ) |
| Debtor. | ) |

## DEBTOR'S OBJECTION TO MOTION TO PURSUE DERIVATIVE CLAIM

Debtor-in-Possession, Loveland Essential Group, LLC ("Debtor"), through its counsel, objects to the Motion to Pursue Derivative Claims (the "Motion") filed by creditors Grommon Farms, Inc., Gary Grommon, and Connie Grommon (collectively, "Grommon"). In support the Debtor states:

### INTRODUCTION

The issue before the Court is whether the Debtor unjustifiably refused to pursue claims against the Debtor's insiders, Randy Jackson, Michael Andrzejek, and Brian Hedberg (collectively, the "Principals"). Grommon alleges that the Principals breached their fiduciary duties owed to the Debtor in purchasing 450 units in Rocky Mountain RV Essential Group, LLC ("RMRV") for $450,000.00 and authorizing a $750,000.00 loan to RMRV.

Grommon's claims were justifiably refused because they are not valid. In fact, bringing these claims violates Fed.R.Bankr.Pro. 9011. The $750,000.00 loan was not only repaid with interest pursuant to the terms of promissory note executed by RMRV, but the Debtor profited by an overpayment of $39,079.70. The RMRV units were purchased with the Debtor's funds, by the Debtor, and are part of this bankruptcy estate. These units were purchased at the same $1,000.00 per unit that all other investors paid, but the Debtor units receive preferential distribution rights over all other RMRV investors. Moreover, the units will be liquidated in this

bankruptcy case and the $750,000.00 was fully repaid over 4 years ago. Thus, the Debtor has no damages that it can allege. Under these circumstances, Grommon's Motion must be denied.

## BACKGROUND[1]

**A.    The Purchase of 450 Units of RMRV.**

1. The Principals are collectively the managing members of (1) The Randy Jackson Revocable Trust Amended 06/18/98 and (2) the Essential Group, LLC. These entities are the managers of both the Debtor and RMRV.

2. Randy Jackson Revocable Trust Amended 06/18/98 is managed by Randy Jackson, and Essential Group, LLC is managed by Brian Hedberg and Michael Andrzejek.

3. RMRV has 3 categories of membership interests. A membership interest is defined by the type of unit ("Unit") issued. All RMRV Units are valued at $1,000.00 per unit. *See* Verified Statement of Brian Hedberg (the "Hedberg Statement), attached hereto as **Exhibit A**, ¶ 4. The 3 types of Units are (1) Class A Voting Units, (2) Class A Non-voting Units, and (3) Class B Non-voting Units. *See* Exhibit 1 to the Hedberg Statement, at Article 1.

4. Holders of Class B Non-voting Units receive preferential distributions, up to $70,000.00 per annum, over all other unit holders. *See* Exhibit 1 to the Hedberg Statement, Article 4.8.

5. Voting Units provide the right to vote for or against RMRV corporate actions. Voting Units are held, and have always been held, by the managers of RMRV.

6. All unit holders, except the managers and Debtor, hold Class A Non-voting Units. These investors have no right to vote on corporate actions and do not receive preferential distributions. *See* Hedberg Statement, ¶¶ 2, 6.

---

[1] Grommon's Motion weaves speculation and assumption into its statements. Inaccurate statements based on assumptions do not make colorable legal claims.

2

7. RMRV issued 500 Class A Voting Units, valued at $1,000.00 per unit, to its managers.[2] *See* Hedberg Statement, ¶ 3.

8. RMRV issued 2,832 Class A Non-voting Units to approximately 46 investors for the total price of $2,832,000.00. *See* Hedberg Statement, ¶ 6.

9. On May 8, 2007, the Debtor invested in RMRV and purchased 450 units of Class B Non-voting Units. The Debtor paid $450,000.00. *See* Contribution/Subscription Agreement, attached to Grommon's Motion as Exhibit F, Dkt. # 215-1, pp. 33 – 41; *see also* Hedberg Statement, ¶ 7.

10. The Debtor holds a line of credit from Home State Bank ("Home State"). The Debtor used $450,000.00 from its line of credit to purchase the 450 Class B Non-voting Units.

11. The Debtor has received a total of $59,438.00 in distribution payments from RMRV on account of the 450 Units. *See* Hedberg Statement, ¶ 8.

12. The Debtor still owns the 450 Units. *See* Schedule B, Dkt. # 1, p. 18. The Debtor will liquidate the 450 Units for the benefit of the estate. *See* Plan of Reorganization, Dkt. # 188, Article 7, pp. 7-8.

**B.     The $750,000.00 Loan to RMRV.**

13. On May 8, 2007, the Debtor loaned RMRV $750,000.00 (the "RMRV Loan"). In exchange, RMRV executed a promissory note to the Debtor, in the amount of $750,000 plus any and all loan origination or renewal fees the Debtor incurred to provide the loan. Interest on the loan was payable at a rate of 7.5%. *See* RMRV Promissory Note date May 8, 2007, attached to Grommon's Motion, Dkt. # 215-1, p. 42.

14. The RMRV Loan allowed RMRV to conduct operations, increase the value of the

---

[2] RMRV issued 500 Class A Voting Units to its managers for the services rendered, including organization and formation of RMRV. RMRV did not receive payment for these 500 units.

450 Units held by the Debtor, and provide the Debtor a profit from the return on the loan. RMRV and the Debtor both operate in the recreational park industry, and mutually benefit each other by attracting customers to Colorado.

15. The Debtor used its line of credit from Home State to fund the RMRV Loan. Debtor's loan origination fees were $32,500.00. The Debtor also incurred a $500.00 fee for renewal of its line of credit. Therefore, the total amount owed to the Debtor pursuant to the RMRV Loan was $783,000.00. *See* Verified Statement of Derek J. Halvorson (the "Halvorson Statement"), attached hereto as **Exhibit B**, ¶ 3.

16. RMRV made payments to the Debtor on the RMRV Loan starting in September 2007. *See id.* at ¶ 3. RMRV fully satisfied the RMRV Loan over 4 years ago. *Id*. This occurred on August 25, 2008, when R&T LLC paid $750,000.00 to the Debtor on behalf of RMRV. *See* Halvorson Statement, ¶ 3. A true and accurate copy of the payment made by R&T LLC is attached hereto as **Exhibit C**. R&T LLC became a take-out lender to RMRV, which executed a promissory note in favor of R&T LLC for $750,000.00. A true and accurate copy of the replacement promissory note is attached hereto as **Exhibit D**.

17. Subsequent to the $750,000.00 repayment, RMRV provided payments of $5,500.00 on January 30, 2009 and $8,803.77 on February 4, 2009 for the RMRV loan. *See* Halvorson, ¶ 3. Thus, the Debtor received a total return of $895,195.90 on the $750,000.00 loan, or $39,079.70 in excess of RMRV's obligations under the promissory note.

**ARGUMENT**

A. **LEGAL STANDARD.**

The debtor-in-possession has exclusive right to control derivative claims, and Grommon must show that the Debtor abused its discretion by unjustifiably refusing to pursue the breach of fiduciary duty claims, giving specific reasons why the refusal is unjustified. *In re Terra Bentley II, LLC,* 2001 WL 808190, slip op. at *4 (Bankr. D. Kan. March 2, 2011). In Colorado, the Principals' business judgment will not be disturbed absent some lack of good faith or exercise of unlawful or illegitimate corporate purpose. *See Curtis v. Nevens,*, 31 P.3d 146, 151 (Colo. 2001) (the business judgment doctrine "bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes. The business judgment doctrine reflects the reality that Court 'are ill equipped and infrequently called on to evaluate what are and must be essentially business judgments.'" (citations omitted)). The business judgment rule equally applies in the limited liability company context. See Colo. Rev. Stat. § 7-80-716; *see also Young v. Bush*, 277 P.3d 916, 926 (Colo. App. 2012).

In bankruptcy, the Debtor's reasonable business judgment in deciding what actions to commence and what are not worth the expense is crucial to the Chapter 11 process. Courts do not entertain objections to conduct that involves a debtor-in-possession's business judgment made in good faith, upon a reasonable basis, and within the scope of its authority under the Code. *See In re Curlew Valley Assoc.*, 14 B.R. 506, 513-514 fn. 12 (Bankr. Utah 1981) ("[a]n analogy may be drawn to suits by shareholders against directors who, like trustees, in the exercise of business judgment, make decisions of policy for corporations: 'Corporate management is vested in the board of directors. If in the course of management, directors arrive at a decision, within the corporation's powers (intra vires) and their authority, for which there is a reasonable basis, and

5

they act in good faith, as the result of their independent discretion and judgment, and uninfluenced by any consideration other than what they honestly believe to be the best interests of the corporation, a court will not interfere with internal management and substitute its judgment for that of the directors to enjoin or set aside the transaction or to surcharge the directors for any resulting loss.'" (citations omitted)).

**B. GROMMON'S CLAIMS ARE NOT COLORABLE BECAUSE THE TRANSACTIONS WERE BENEFICIAL TO THE DEBTOR, INCLUDED ADEQUATE CONSIDERATION, AND PROVIDED NO PERSONAL BENEFIT TO DEBTOR'S PRINCIPALS.**

Grommon sweepingly concludes that that the Principals provided (1) inadequate consideration to the Debtor, (2) the transaction did not benefit the Debtor, and (3) that the Principals converted a corporate opportunity for their own benefit. *See* Grommon's Motion, Dkt. # 215, p. 4.[3] These allegations are meritless.

> *1. THE RMRV LOAN FROM THE DEBTOR TO RMRV WAS AN APPROPRIATE USE OF BUSINESS JUDGMENT.*

The RMRV Loan was made by the Debtor to RMRV on May 7, 2008. The 7.5% annum interest rate was adequate consideration provided by RMRV in exchange for the RMRV Loan. Moreover, pursuant to the promissory note, RMRV was required to pay for any loan origination or renewal fees incurred by the Debtor. The cash received by RMRV and fees incurred by the Debtor totaled $783,000.00.

The Debtor profited, handsomely, from the RMRV Loan. It was fully repaid and, upon further investigation due to Grommon's allegations, the Debtor received an <u>additional</u> $39,079.70 more than required under the note. In sum, the Debtor loaned RMRV $750,000.00 for a 19 month period, and received $895,195.90 in return. It is outrageous for Grommon to

---

[3] Grommon states that he lacked knowledge of the transactions. This is irrelevant to the issue before the Court. Grommon agreed to receive non-voting shares of the Debtor and is not entitled to participate in managerial decisions. *See* List of Equity Security Holders, Dkt. # 1, p. 34.

assert that any cause of action can arise out of a loan that has been repaid in full, at 7.5% annum interest, and included an overpayment in the sum of $39,079.70.

Besides the overpayment, the Debtor additionally benefitted from the Principals' sound business judgment. While RMRV continued to make interest payments at 7.5%, the Debtor profited from a change in terms on its line of credit from Home State. In September 2007, the interest rate owed by the Debtor to Home State was reduced to 7%. In June 2008, the interest rate owed by the Debtor to Home State was reduced to 6.5%. *See* Change in Agreements, attached hereto as **Exhibit E**.

Moreover, RMRV and the Debtor operate in the same recreational vehicle industry. The Principals used their knowledge to determine that the RMRV Loan would directly benefit the Debtor. Debtor's main asset, the Loveland RV Resort, is managed by Essential Group, LLC. Essential Group, LLC is the same manager of RMRV's recreational parks, which greatly helps the Debtor. As an example, the Debtor benefitted from cross-marketing during the Fern Lake fire in 2012 near Estes Park, when customers at RMRV's Spruce Lake recreational park were relocated to the Loveland RV Resort. Also through this structure, the Debtor benefits from cross-marketed promotions and advertising amongst multiple parks, and lower operating, maintenance, and supply costs. The Debtor would incur significantly more expense if it was not collectively managed with other recreational parks. The Debtor's customers are more attracted to the front range of Colorado since they can choose between multiple recreational park locations.

The RMRV Loan was repaid with interest (in fact, overpaid) over 4 years ago. Not only are there no legally ascertainable damages from the transaction, it was a profitable transfer for the Debtor. The outstanding amounts owed by the Debtor to Home State on the petition date have no relation to the RMRV Loan. The Debtor and its shareholders, including Grommon,

benefitted from this loan.  As such, the Debtor properly refused to pursue this alleged claim because it lacks any colorable evidence supporting a breach of fiduciary duty.

    2.    *THE DEBTOR'S INVESTMENT IN RMRV PROVIDED THE DEBTOR WITH UNITS THAT HAVE PREFERENTIAL PAYMENTS OVER ALL OTHER INVESTORS, AND THESE 450 UNITS ARE STILL OWNED BY THE DEBTOR'S BANKRUPTCY ESTATE.*

Grommon alleges that a claim exists against the Principals for the purchase of Class B Non-Voting Units from RMRV.  Grommon disregards that the Debtor still owns the 450 Units and received more beneficial units on its investment than any other investor.  There are three types of RMRV units and, regardless of type, valued at $1,000.00 per unit.  The types are (1) Class A Voting, (2) Class A Non-Voting, and (3) Class B Non-Voting.

The managers of RMRV received 500 units of Class A Voting Units valued at $500,000.00.  Thereafter, approximately 46 investors collectively received 2,832 Class A Non-voting Units valued at $2,832,000.00.  These investors were expressly advised that Class B Non-voting Units were more valuable and may be issued subsequent to their purchase.  The Debtor is the only investor holding Class B Non-Voting Units.  The Debtor paid the identical price as other investors, and purchased the 450 units for $450,000.00.

The Debtor still owns the 450 RMRV units (the "Units").  The Units will be liquidated for the benefit of creditors.  Thus, Grommon's allegation that the Principals "converted a corporate opportunity for their own benefit" by authorizing the Debtor to purchase Units with its own funds lacks merit.

Grommon simply seeks to harass the Debtor and its Principals at any cost.  Understanding that all investors including the Debtor paid $1,000.00 per unit, Grommon argues "[i]nstead of receiving voting shares, Debtor received Class B stock leaving the control of RMRV in the hands of [the Principals] instead of LEG."  *See* Grommon's Motion, p. 3.  This argument is non-sensical, and asserting a claim on this basis is frivolous.

8

First, an investor in an closely-held entity does not usually receive voting shares. Investors provide capital for units in an entity with the expectation of receiving a profitable return of their investment. Most investors in RMRV receiving Class A Non-Voting Units purchased 2,832 units for $2,832,000.00. None of these investors were offered or entitled to control RMRV through their investment; the Debtor is no different. Grommon's allegation that the Debtor should be allowed to control RMRV by providing a $450,000.00 investment lacks any rational basis, and disregards the corporate formalities of RMRV.

Second, the Debtor received units that are more valuable than Class A Non-voting Units. The Class B Non-voting Units, held only by the Debtor, provide preferential distributions up to $70,000.00 annually. Thus, the Debtor's investment in RMRV was identical to all other investors, but it received units that were more valuable than the units received from other investments.

Not only did the Debtor receive more than adequate consideration through the preferential units, the Debtor further benefitted and received $41,438.00 in investor distributions from October 2007 through October 2008. The Debtor received an additional $18,000.00 in distributions in 2009.

Third, Grommon agrees that the Units are valuable, and that the Debtor is currently entitled to a large distribution from RMRV. *See* Creditors' Response to Opposition to Debtor's Amended Disclosure Statement, Dated October 26, 2012, Dkt. # 175, p. 4.[4] This distribution from RMRV is pending resolution of a dispute between RMRV and its lender, Key Bank.

In totality, the Principals' business judgment was very sound. The Units were purchased in good faith and with reasonable expectation of a profitable return. The Debtor's investment (1)

---

[4] The Debtor does not know the approximate amount of the distribution; Grommon's claim of $96,000.00 is purely speculative.

has a preferential status over other investors paying the same $1,000.00 per unit, (2) yielded the Debtor substantial distributions, and (3) will provide further value to the estate once the RMRV's anticipated distribution occurs. Last, the Units are still owned by the Debtor and will be liquidated. The Debtor therefore has no damages to allege without creating frivolous claims based on irrational or false allegations.

## CONCLUSION

The false allegations in the Complaint are frivolous, lack evidentiary support, and are not presented for a proper purpose. Grommon has conducted Fed.R.Bankr.Pro. 2004 examinations of the Debtor, RMRV and Essential Group, LLC. *See* Dkt. # 89. These examinations were preceded by significant pre-petition discovery and litigation against the Debtor, which resulting in this Chapter 11 filing. After its investigation, Grommon knows the true facts of the issues surrounding its complaint; its allegations violate Fed.R.Bankr.Pro. 9011.

Grommon's Verified Complaint alleges that:

"...[RMRV] only provided 450 shares of nonvoting stock, valued at a maximum of $450,000.00, in exchange for the $1,232,500.00 tendered by [the Debtor]."

*See* Verified Complaint, Dkt. # 215-1, ¶¶ 28, 38. This allegation is patently false; the Debtor provided a $750,000.00 loan to RMRV that was repaid with interest. The Debtor also purchased 450 Units from RMRV for $450,000.00, which it still owns.

Grommon's Verified Complaint alleges that:

"Upon information and belief, the 450 shares of nonvoting RMRV stock tendered to [the Debtor] continue to diminish in value, as RMRV continues to sell additional shares of its stock, thereby diluting the vale [sic] of its shares."

*See* Verified Complaint, Dkt. # 215-1, ¶¶ 29, 39. This allegation lacks any factual support, and is misleading and irrelevant. In the 1993 Amendments to Rule 11, the Advisory Committee on Rules noted:

Tolerance of factual contentions in initial pleadings by plaintiffs or defendants

10

> when **specifically identified as made on information and belief does not relieve litigants from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances**; it is not a license to join parties, make claims, or present defenses without any factual basis or justification.

Fed.R.Civ.P. 11 Advisory Committee's notes to 1993 amendment (emphasis added). Grommon's substantial and full opportunity to investigate these issues through Fed.R.Bankr.Pro. 2004, among other circumstances, cannot be overlooked. This Objection discusses all outstanding units issued by RMRV. As stated, 500 Class A Voting Units were issued to RMRV managers. RMRV offered Class A Non-Voting Units to investors, which resulted in the purchase of 2,832 units. The Debtor purchased 450 Class B Non-voting Units. RMRV has not sold additional units; its outstanding units total 3,782 units (500 + 2,832 + 450 = 3,782). *See* Hedberg Statement, ¶ 9.

The Debtor cannot satisfy the damage element necessary to pursue a breach of fiduciary duty claim. Grommon's Verified Complaint nonetheless alleges:

> "The Transaction between [the Debtor] and RMRV was not in good faith, nor did the Directors have an honest belief that the Transaction was in the best interests of [the Debtor]." *See* Verified Complaint, Dkt. # 215-1, ¶¶ 30, 37.

> "The Transaction damaged [the Debtor] in the amount of $1,232,500.00, as well as inhibiting [the Debtor's] ability to secure additional credit." *See* Verified Complaint, Dkt. # 215-1, ¶¶ 31, 40.

As stated, the Principals used sound business judgment to (1) provide a loan that was fully repaid with interest, and (2) received more than adequate consideration for its purchase of RMRV Units, which provide preferential distributions to the Debtor and this estate. The Principals properly determined that the transactions would benefit the Debtor through cross-marketed promotions and advertising amongst multiple parks, and lower operating, maintenance, and supply costs. Under these facts, there exists no accurate allegations of damage incurred by the Debtor; Grommon's allegation are based on false factual allegations.

11

Grommon has no colorable evidence that the transactions were not completed in good faith.  The Principals rationally determined that the Debtor would benefit from the RMRV Loan; since the loan was fully repaid years ago, the Debtor can even demonstrate that its expectation resulted in a realized profit, among other benefits.  Grommon is also fully aware that the Debtor purchased 450 RMRV preferential units and simultaneously provided the RMRV Loan.  The only rational conclusion is that the Principals believed that both transactions would benefit the Debtor.

Allegations based on speculation and inaccurate facts are not colorable.  Grommon's allegations do not amount to a prima facie case against the Principals.  Therefore, the Debtor justifiably refused to pursue Grommon's request and derivative standing cannot be granted.

For the reasons stated herein, the Debtor respectfully requests that the Court deny Grommon's Motion to Pursue Derivative Claim.

Dated this 12th day of April, 2013.

**LINDQUIST & VENNUM P.L.L.P.**

By:  /s/ Ethan J. Birnberg
    John C. Smiley, #16210
    Ethan J. Birnberg, #43343
600 Seventeenth Street, Suite 1800-S
Denver, Colorado 80202-5441
Telephone:  (303) 573-5900
Facsimile:  (303) 573-1956
E-mail: jsmiley@lindquist.com
E-mail: ebirnberg@lindquist.com

Counsel for Loveland Essential Group, LLC

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 12th day of April 2013, I served by U.S. Mail, prepaid, first class, a copy of the foregoing **DEBTOR'S OBJECTION TO MOTION TO PURSUE DERIVATIVE CLAIM** on the following parties:

Erik Fischer
125 S. Howes St., Suite 900
Fort Collins, CO 80521

Alison Goldenberg
999 18th St., Suite 1551
Denver, CO 80202

Chad Caby
1200 17th Street, Suite 3000
Denver, CO 80202-5855

/s/ Brandon Blessing

DOCS-#3862843-v2